UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, as subrogee of PLUMTREE CENTER, }<br><br>Plaintiff, }<br><br>vs. }<br><br>BROAN-NUTONE, LLC, }<br><br>Defendant. } | CASE NO. CV 05-B-1440-NE |

### MEMORANDUM OPINION

This case is currently before the court on defendant Broan-Nutone, LLC's ("Broan") Motion for Summary Judgment, (doc. 23-1), and Motion to Exclude Purported Expert Testimony of John Machnicki Pursuant to *Daubert*, (doc. 24-1).[1] In its Amended Complaint, Plaintiff, the Travelers Indemnity Company of America ("Travelers"), contends that a fan manufactured by Broan caused a fire loss at Plumtree Center ("Plumtree"), a shopping center insured by Travelers. (Doc. 8 at ¶¶ 5–6, 10–11.) Travelers claims that Broan is liable under theories of negligence, the Alabama Extended Manufacturers Liability Doctrine ("the AEMLD"), and breach of the implied warranty of merchantability pursuant to Ala. Code § 7-2-314. (*See generally id.*) Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

law, the court is of the opinion that Broan's Motion for Summary Judgment is due to be denied as to Travelers' negligence and AEMLD claims, and granted as to Travelers' breach of implied warranty claim.

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be

drawn in her favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## II.  STATEMENT OF FACTS[2]

On September 1, 2003, a fire occurred at Plumtree, located in Decatur, Alabama. (Doc. 23-2 at ¶ 1.)  The fire occurred in an area of the shopping center occupied by the Bestway Rental Store, and originated above the restroom area in the Bestway Rental Store ("Bestway"). (*Id.* at ¶¶ 2–3.)  Travelers contends that the fire was caused by a bathroom ceiling exhaust fan ("the ceiling fan") manufactured by Broan. (*Id.* at ¶ 4.)

There were two bathrooms in the northeast corner of Bestway. (*Id.* at ¶ 5.)  Both bathrooms were outfitted with ceiling fans manufactured by Broan. (*Id.* at ¶ 7.)  In support of its claim that Broan's ceiling fan caused the fire, Travelers relies on the opinions of John P. Machnicki, Jr. ("Machnicki"), and Tony L. Echols, P.E.[3] (*Id.* at ¶ 10.)

Machnicki's report asserts that the fire was caused by an overhead motor within the ceiling fan located in the men's bathroom. (Doc. 30-3, Ex. A-2 at 9.)  Machnicki, like

---

[2] As required when evaluating a motion for summary judgment, the Statement of Facts cites evidence and all reasonable inferences arising from it in the light most favorable to Travelers, the nonmoving party. *See, e.g.*, *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted).

[3] Machnicki's testimony is crucial to Travelers' case.  Not only has Broan filed a Motion to Exclude Machnicki's Testimony, Broan's Motion for Summary Judgment focuses almost entirely on discrediting Machnicki's testimony as "speculation, guess work, surmise, and conjecture." (Doc. 23-3 at 3.)

Steven Shelton ("Shelton") of Decatur Fire & Rescue, first concluded that the fire originated above the bathrooms. (Doc. 23-4, Ex. C at 1.) Shelton further concluded that the fire was caused by the ceiling fans or the wiring above the bathrooms. (*Id.*) In his report, Machnicki eliminated the wiring as the source of the fire and presented his theory as to how the ceiling fan caused the fire:

> The ignition energy was provided by the overheated motor coupled with the parting arcs observed on the windings. The first fuel to be ignited was the combustible material that is known to accumulate within the ceiling fans during normal use. The conditions that brought the ignition source and fuel together was the fact that the design of the fan allows for the unabated build up of the combustible material in and around a motor (shaded pole motor) that is known to lock up at its end of life. The locked up rotor conditions coupled with the accumulation of the material act to create temperatures destructive to the winding insulation. Once the insulation is compromised excessive currents are passed through the motor due to the reduction in impedance caused by turn to turn shorting. As the ampacity of the windings are exceeded the windings fuse creating a parting arc. The parting arc acts as a pilot and ignites the pyrolyzate coming off the accumulated material that is heated to or beyond its piloted ignition temperature.

(Doc. 30-3, Ex. A-2 at 9–10.) In other words, Machnicki's theory is that insulating/combustible material[4] collected on the fan. This material acted as an insulator, causing the temperature of the motor to rise. Without insulation, Machnicki concedes that the motor will not overheat. (Doc. 23-4, Ex. D at 105.) In addition to the insulation,

---

[4] According to Travelers, this material is partially dust, but primarily cellulosic in nature. (Doc. 30-1 at 8 n.6.) Cellulose is a complex carbohydrate that is composed of glucose units and forms the main constituent of the cell wall in most plants. Cellulose is important in the production of numerous products, including paper. *See* THE AMERICAN HERITAGE COLLEGE DICTIONARY 226 (3d ed. 1993).

Machnicki's theory also requires that there was a "locked rotor," which created excess temperatures.[5] (*Id.*) According to Machnicki, a locked rotor condition and insulation are necessary components of his theory. (*Id.*) Machnicki states that the locked rotor could have occurred because of the collection of material on the fan, but also may have occurred because of some other reason. (Doc. 23-4, Ex. D at 106.) According to Machnicki, the elevated temperatures damaged the insulation on the motor windings. (Doc. 23-4, Ex. C at 5.) The damaged insulation ultimately caused the current flow to exceed the ampacity of the winding, which caused a parting arc that ignited the pyrolyzate created by the heating of the dust and cellulosic material. (*Id.* at 9–10.)

### III.  DISCUSSION

A.  **Broan's Motion to Exclude Testimony of Machnicki Pursuant to *Daubert***

Broan moves to preclude Machnicki's opinion testimony pursuant to the expert testimony admissibility standard articulated in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993). "When a party offers expert testimony and the opposing party raises a *Daubert* challenge, the trial court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

---

[5] A "locked rotor" means that the rotor on the fan motor became mechanically prevented from turning. (Doc. 23-1 at 13 n.3.) According to Machnicki, a locked rotor generates excess temperatures. (Doc. 23, Ex. D at 105.) According to Machnicki, Underwriter Laboratory experiments show that when the rotor is locked, the temperature of the motor winding increases dramatically. (Doc. 30, Ex. A-2 at 6.) While the temperature of the motor winding may hover from 120 degrees Fahrenheit to 133 Fahrenheit when the motor functions in a normal manner, the temperature increases to temperatures ranging from 287 degrees Fahrenheit to 309 degrees Fahrenheit when the rotor is locked. (*Id.*)

same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Federal Rule of Evidence 702 authorizes the admission of expert opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. This rule lays the foundation for the *Daubert* analysis, which requires a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. Therefore, the court's focus is "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The Supreme Court identified the following nonexclusive factors for trial courts to use in determining the reliability of scientific opinions: (1) whether the theory can and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or expected rate of error; and (4) whether the theory and methodology employed is generally accepted in the relevant scientific community. *Id.* at 593–94.

As noted by Broan, Machnicki designed and commenced a comprehensive test of his theory, but did not complete the test. (Doc. 24-2 at 7.) However, Machnicki and others have conducted tests of several aspects of his theory. Furthermore, Travelers has

submitted evidence that Machnicki's theory *can* be tested. *See Daubert*, 509 U.S. at 593 (noting that a key question is a theory's "falsifiability, or refutability, or testability" and that "[t]he statements constituting a scientific explanation must be capable of empirical test"); *Kumho*, 526 U.S. at 145 (referring to the theory's "testability"). *See also Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001) ("Importantly, although Machnicki[6] did not test his theory experimentally, his theory is *capable* of being tested, so that GE's experts could employ testing to undercut it and, indeed, have engaged in such efforts.") (emphasis in original).  In fact, Broan states that "by first starting, then stopping the test, Machnicki has proven that his dust ignition theory is, in fact, capable of being tested." (Doc. 24-2 at 8.)

Broan argues that Machnicki's theory has never been subjected to peer review or publication.  However, Travelers has submitted a publication, *Scientific Protocols for Fire Investigation*, in which John J. Lentini ("Lentini") explains that "if the [exhaust fan's] motor stalls and is covered with dust, heat may fail to dissipate quickly enough to prevent the temperature of the dust from rising until ignition occurs," and "the brief spark that occurs when the coils open may be sufficient to ignite the accumulated dust." (Doc.

---

[6] The *Travelers Property* court refers to the same Machnicki who is the subject of Broan's Motion.  In *Travelers Property*, the court allowed Machnicki to offer expert testimony that "the design of the GE dryer permits the accumulation of lint behind the dryer drum in an area undetectable to the homeowner . . . [and] that the lint that accumulates in this area can be ignited by the dryer's heating elements that are located in close proximity to the rear of the drum, thereby causing a fire." *Travelers Prop.*, 150 F. Supp. 2d at 362, 369.  Machnicki's testimony in *Travelers Property* shares many similarities with his testimony in the present case.

32-18, Ex. I at 3.)  According to Lentini, this process sometimes causes fans to catch fire. (*Id.*)  Much like Lentini, Machnicki claims that the gathering of dust and cellulosic material on the fan may insulate the motor, causing an increase in temperature that may lead to the ignition of the dust and cellulosic material.  In addition to Lentini's publication, Machnicki has submitted examples of a number of publications describing crucial underlying elements of his theory.  (Doc. 32-11, Ex.B; Doc. 32-20, Ex. K; Doc. 32-22, Ex. M.)  For example, the National Fire Protection Association 921 Guide for Fire and Explosion Investigations ("the NFPA 921"), which "qualifies as a reliable method endorsed by a professional organization" under *Daubert*,[7] states that if the rotor is stopped while the motor is still energized, the impedance falls and the current flow increases, which can cause the motor windings to get hot enough to ignite the insulation and any plastics that are part of the construction. (Doc. 32-11, Ex. B at ¶ 24.5.6.)

     A review of Machnicki's deposition testimony and his report also convinces the court that, in reaching his conclusions, Machnicki followed the scientific method and a reliable methodology.  In his report and his deposition testimony, Machnicki makes clear that he followed the methodology promoted by the NFPA 921, "a peer reviewed and generally accepted standard in the fire investigation community."  *See Travelers Prop.*, 150 F. Supp. 2d at 366.

---

     [7] *See Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057–58 (8th Cir. 2005).

Therefore, the court joins several other district courts that have admitted Machnicki's expert opinion testimony. *See, e.g.*, *id.* (admitting Machnicki's testimony on the subject of dryers and fire causation); *Travelers Indem. Co. of Ill. v. Broan-Nutone, LLC*, No. 02-488 (E.D. Ky. filed Oct. 28, 2002) (admitting Machnicki's testimony on the subject of exhaust fans and fire causation); *Marjoden, Inc., et al. v. Fasco Indus., Inc.*, No. 00-1414 (W.D. Penn. filed July 21, 2000) (admitting Machnicki's testimony on the subject of exhaust fans and fire causation).[8]

In sum, Machnicki's theory is the product of sufficiently reliable principles and methods. Therefore, the court concludes that Machnicki's opinion testimony satisfies the *Daubert / Kumho* standard. Broan's Motion to Exclude, (doc. 24-1), will be denied.

B.   **Broan's Motion for Summary Judgment**

Travelers claims that Broan is liable under theories of negligence, the AEMLD, and breach of the implied warranty of merchantibility. Broan moves for summary judgment on all counts.

*1.   Breach of Warranty*

"Implied warranties are applicable only to sellers." *Ex parte Gen. Motors Corp.*, 769 So. 2d 903, 910 (Ala. 1999). "There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract." *Wellcraft*

---

[8] *Travelers Indemnity Company of Illinois* and *Marjoden* have both been closed by stipulations of dismissal, but the courts in each case ruled that Machnicki's expert opinion testimony was admissible. (Doc. 32 at 18.)

*Marine, a Div. of Genmar Indus., Inc. v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) (emphasis in original). *See also Rose v. Gen. Motors Corp.*, 323 F. Supp. 2d 1244, 1246 (N.D. Ala. 2004) (automobile manufacturer was not a "seller" that could be held liable for breach of the implied warranty of merchantability). Because Travelers has not presented any evidence that Broan sold the bathroom fan to the shopping center (insured by Travelers), Broan is not liable for breach of the implied warranty of merchantability. Therefore, Broan's Motion for Summary Judgment, (doc. 23-1), will be granted as to Travelers' breach of warranty claim.

### 2. Negligence

Broan focuses its argument on the issue of causation. According to Broan, "Travelers, through its witness, Machnicki, attempts to supply the proximate causation prong of its burden of proof purely by inference upon impermissible inference." (Doc. 23-3 at 6.)

Although Broan devotes its entire brief to discrediting Machnicki's theory as to how the ceiling fan caused the fire, it is necessary to understand why Machnicki focused his attention on the fan in the first place. It is undisputed that the fire originated above the restroom area of Bestway. Indeed, Shelton, the Decatur fire investigator, also concluded that the fire cause was accidental and associated with the ceiling fans or the wiring that existed above the bathrooms. (Doc. 30, Ex. A-2 at 1.)

In his report, Machnicki states that he examined all items removed from the area of the fire's origin. (Doc. 30, Ex. A-2 at 4.) According to Machnicki, electrical activity was found in the men's room ceiling fan, but not on any other item. (*Id.*) Machnicki states that "[e]lectrical activity is the identification of highly localized melting of the copper [motor] windings," and "[s]uch highly localized melting cannot be caused by fire melting because the heat from the fire attacks the entire motor winding." (*Id.*) In other words, if the fire started in another place, moved to the fan, then melted the motor winding, the melting would not be as highly localized.

Upon concluding that the motor winding insulation (the copper) broke down, or "short circuited," Machnicki turned to the question of how the short circuit occurred. (Doc. 30, Ex. A-2 at 5.) Machnicki ruled out "fire attack"[9] from below as the source of the heat that damaged the winding insulation because the fire originated above the ceiling, while the fire in the bathroom below the ceiling occurred due to "drop down." (*Id.*) Machnicki ruled out fire attack from outside the fan housing because he did not identify any ignition sources other than the fan in the area of origin. (*Id.*) Machnicki also noted that fire attack from outside the fan housing was unlikely because the wiring serving the fan did not show electrical activity, and opines that it would have showed electrical activity if attacked by a fire originating at a location other than the fan.[10] (*Id.*) According

---

[9] Fire attack refers to a fire starting in another place. (Doc. 23-3 at 7.)

[10] Machnicki supports this opinion with his "Flame Impingement Studies," which suggest that the house wiring serving the fan would be more susceptible to an advancing fire than the

to Machnicki, the lack of electrical activity on the house wiring means that the shorting and subsequent electrical activity on the motor winding tripped the circuit breaker before the fire could reach the house wiring. (*Id.*)

Therefore, Machnicki concluded that the fire began in the ceiling fan. Machnicki then presented his theory as to how the fire began in the ceiling fan. It is this theory that Broan's Motion for Summary Judgment attacks.

Broan argues that Travelers "has no actual physical evidence of dust accumulation," and that Machnicki's inference that the fan motor experienced a locked rotor before the fire is inadmissible speculation. (Doc. 23-3 at 9, 14.) Of course, if Machnicki's theory is correct, there would not be any evidence of dust accumulation. Machnicki opines that the dust and cellulosic material not only insulated the motor, causing the temperature to increase, but also provided the first fuel for the fire. The rotor, like any dust that may have existed, was destroyed in the fire. Machnicki identified two potential ignition sources in the area of origin, the wiring and the fan, and by scientifically excluded the wiring, he was left only with the fan. Because, in Machnicki's opinion, the fan could have caught fire only if dust accumulated and the rotor locked, the absence of any physical evidence does not mean that Travelers has not created an issue of fact through Machnicki's expert opinion.

---

motor windings. (Doc. 30, Ex. A-2 at 36–40.)

Broan also argues that Machnicki makes an additional inference "that the motor, in locked rotor condition, generates heat which cannot be dissipated due to the insulating effect of the accumulated dust," and that the resulting "rise in temperature in the motor [is] sufficient to exceed the breakdown temperature of the insulation on the motor windings."  (Doc. 23-3 at 14, 15.)  However, Machnicki's opinion is based on testing and generally accepted principles.  For example, in his report, Machnicki cites the NFPA's *Industrial Fire Hazards Handbook*, which states:

> Motors are the cause of many fires at industrial locations.  The ignition of the motor insulation or of nearby combustible materials may be caused by sparks or arc from the motor winding short circuits or grounds, or from improperly operating brushes . . . . Dust that can conduct electricity may be deposited on the insulation, or deposits of textile fibers, etc. can prevent the normal dissipation of heat . . . . Motors, as with most electrical equipment, should be installed in areas having minimum dust, dirt, and other foreign materials. . ..

(Doc. 32-16, Ex. G at 877.)  Machnicki also refers to an Underwriters Laboratory test finding that temperatures more than doubled when the rotor locked.  Machnicki concluded that "the only viable reason for the winding insulation to be damaged . . . is from excess temperatures generated by a lock [sic] rotor condition coupled with the insulative effects of an accumulation of material known to collect in and around the motors during normal use."  (Doc. 30, Ex. A-2 at 6.)  He also noted that "[a]ll other mechanisms [that could have started the fire] have been considered and eliminated."  (*Id.*)

Finally, Broan challenges Machnicki's opinion that the temperature rose enough to cause the dust and cellulosic material to emit pyrolyzates, which came in contact with the

motor arcs and started the fire. However, Machnicki supported his opinion with testing and generally accepted principles. For example, his report describes the "Insulation Break Down Test," in which the rotor was locked and cotton was wrapped around the motor to simulate the accumulation of dust and cellulosic material. (Doc. 30, Ex. A-2 at 7-8.) In the test, the motor winding reached 475 degrees Fahrenheit and the cotton ignited. (Doc. 30, Ex. A-2 at 8.) Travelers, interpreting Machnicki's report of the test, explains that, as dust and cellulosic material heat up, they begin to break down thermally and give off gaseous compounds called pyrolyzate (as do all solids). (Doc. 30-1 at 13.) According to Machnicki, the electrical arc emanating from the motor generated more than enough energy to ignite the pyrolyzate. (Doc. 30, Ex. A-2 at 8.) Furthermore, Machnicki opines that, because the pyrolyzate is gaseous, and there are gaps surrounding the motor between the mineral wrap and the windings, the electrical arc came in contact with the pyrolyzate. (Doc. 23-4, Ex. D at 138–39; Doc. 30-1 at 15–16.)

Machnicki's expert opinion creates an issue of fact that the ceiling fan was the proximate cause of the fire. Although Broan clearly takes issue with Machnicki's opinion and the bases for his opinion, it has not shown that it is entitled to judgment as a matter of law. Therefore, Broan's Motion for Summary Judgment, (doc. 23-1), will be denied as to Travelers' negligence claim.

14

### 3. AEMLD

Travelers alleges a design defect and a failure to warn claim under the AEMLD. Broan contends that it is entitled to summary judgment on the design defect claim because Travelers has not shown that an alternative design outweighed the utility of the design actually used. Broan contends that it is entitled to the summary judgment on the failure to warn claim because Travelers has not shown that the ceiling fan caused the fire.

Travelers' design defect claim requires that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]." *Gen. Motors Corp. v. Jernigan*, 883 So. 2d 646, 662 (Ala. 2003). The existence of a safer, practical, alternative design must be proved by showing that:

> (a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
>
> (b) taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

*Id.* (quoting *Beech v. Outboard Marine Corp.*, 584 So. 2d 447, 450 (Ala. 1991)).

Travelers contends that the motor in Broan's ceiling fan should have used a thermal protection device instead of impedance protection. Travelers satisfies the first element through Machnicki's expert testimony. In his report, Machnicki states that "[t]he fire in this case could have been prevented by using a motor that was equipped with a

thermal protection device that would have sensed the excessive temperature rise in the motor windings and would have acted to interrupt power to the fan thereby preventing the attainment of dangerous temperatures." (Doc. 30, Ex. A-2 at 11–12.) Travelers has also provided evidence that motors containing thermal protection devices were available before the ceiling fan's manufacture. (Doc. 30-1 at 16 n.12.)

Travelers also creates an issue of fact as to the second element, that the utility of the alternative design outweighed the utility of the design actually used. The intended use of exhaust fans with thermal protection devices is the same as fans with impedance protection. (Doc. 30-11, Ex. D at 32–33, 38.) Furthermore, according to David Wolbrink, Vice President of Research and Development for Broan, motors with thermal protection devices are generally cheaper than motors with impedance protection. (Doc. 30-15, Ex. H at 95.) Travelers has also submitted evidence that thermal protection devices are more desirable. For example, Machnicki testified that Underwriters Laboratories prohibits the use of impedance protected motors when certain conditions exist, such as restricted ventilation or proximity to an external source of heat. (Doc. 23-4, Ex. D at 232.) The thermal protection device's safety aspect is that it stops the electric current if the temperature is too high for safe operation. (Doc. 32-11, Ex. B at ¶ 24.5.6.1.) Machnicki's testimony also indicates that the accident was foreseeable, and that all fires create a likelihood of serious injury. Although the defect may not be obvious,[11] and it is

---

[11] Travelers contends that the defect is obvious because Underwriters Laboratories disallowed the use of impedance protected motors as early as 1972 if airflow over the motor is

not clear exactly how difficult it would have been for Broan to utilize a thermal protection device, considering the factors as a whole, there is an issue of fact as to whether the utility of the alternative design outweighed the utility of the design actually used.  Thus, Broan's Motion for Summary Judgment is due to be denied as to Travelers' AEMLD design defect claim.

As noted in the above "Negligence" section of this Memorandum Opinion, Travelers has created an issue of fact as to causation through Machnicki's expert testimony.  Furthermore, Machnicki has stated that a warning to the owner to inspect and clean the fan would have prevented material from collecting on the motor, and thus prevented the fire.  (Doc. 30, Ex. A-2 at 13.)  Therefore, Broan's Motion for Summary Judgment is due to be denied as to Travelers' AEMLD failure to warn and design defect claims.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that Broan's Motion to Exclude is due to be denied, and that Broan is entitled to judgment as a matter of law as to Travelers' breach of implied warranty claim.  However, Travelers has created an issue of fact as to its negligence and AEMLD claims.  An order denying Broan's Motion to Exclude and granting in part and denying in part Broan's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

---

impeded.  According to Travelers, it is obvious that dust and cellulosic material collect on the motor and impede airflow.  (Doc. 30-1 at 19.)

**DONE**, this the 25th day of February, 2008.

                                                     SHARON LOVELACE BLACKBURN
                                                     CHIEF UNITED STATES DISTRICT JUDGE